

THE ATTORNEY GENERAL

OF TEXAS
NO. 3051

Gerald C. Mann

AUSTIN 11, TEXAS

ATTORNEY GENERAL

When a person has been adjudicated insane by a court of competent jurisdiction, and confined in a state institution, if this institution unconditionally discharges this person whose mental condition later becomes such that it is necessary that he be recommitted, it is necessary that the person be tried again for insanity before he can be committed to or confined in the institution from which he was discharged, even though the original judgment of conviction has not been set aside.

May 23, 1939

Honorable R. C. Slagle, Jr.
Criminal District Attorney
Sherman, Texas

Dear Sir:

Opinion No. O-685
Re: Can the trial court issue an alias commitment on the original judgment of insanity, or must the person be tried again for insanity?

We are in receipt of your letter of April 24, in which you request an opinion on the following question:

"When a party has been convicted of insanity and sent to a state institution, this institution discharges the party and the party's mental condition later becomes such that it is necessary that they be recommitted, the original judgment of conviction not having been set aside, can the trial court cause to be issued an alias commitment on the original judgment, or is it necessary that the party be again tried?

We are assuming from the above facts a proper adjudication of insanity in a court of competent jurisdiction, an original permanent commitment to the state institution, and a subsequent unconditional discharge by said institution of the party whose sanity was in question.

Hon. R. C. Slagle - Page 2 (O-685)

The two pertinent questions of law raised are (1) the power of the state institution to discharge unconditionally an insane person who has recovered in the opinion and best judgment of the institution officials; and, (2) the power of the court of original jurisdiction to re-commit on the original judgment of insanity a person unconditionally discharged by a state institution as restored to sanity, but who subsequent to the discharge re-lapses mentally to such an extent that re-commitment is necessary.

To say the least, the statutes of the State of Texas in relation to the authority of a state institution for the insane to discharge a person who, in the judgment of the officials, has been restored to a sound mind, are in an unsatisfactory and doubtful condition.

We find no direct statutory authorization for the discharge upon recovery of one permanently committed to a hospital for the insane after proper adjudication of unsound mind by the institution itself.

Section 4 of Article 5561a of Vernon's Annotated Civil Statutes provides the procedure for obtaining a judicial order of discharge where a person not charged with a criminal offense is restored to sanity. It reads as follows:

"Upon the filing in the county court in which a person was convicted or in the county court of the county in which a person is located at the time he is alleged to have had his right mind restored, information in writing and under oath made by a physician legally licensed to practice medicine in Texas, that a person not charged with a criminal offense, who has been adjudged to be of unsound mind, has been restored to his right mind, the judge of said court shall forthwith, either in term time or vacation, order said person brought before him by the sheriff of the county and if said issue be in doubt said judge shall cause a jury to be summoned and impaneled in the same manner as is provided for in Section 3 hereof and shall proceed to the trial of said issue, or if there appears no doubt as to said issue, said judge may try the same without the intervention of a jury, and if said person shall be found to be of sound mind, a judgment shall be entered upon the minutes of said court reciting and adjudging such fact and said persons shall, if then under restraint, be immediately discharged, er in the event he shall be found to be still of unsound mind, he shall be returned by the county court to the place of restraint from which he had been previously ordered, and the original order of commitment shall continue in full force and effect. All costs of proceedings of restoration shall be paid by the county."

It will be noted that the above section provides that in the event a person under restraint is adjuged to be of sound mind he shall "if then under restraint, be immediately discharged." There is no discretion in the officials of the institution of confinement. The judgment of sanity would be the official authority for such discharge, and notice of same served upon the asylum authorities would open the door of freedom to the inmate restored to sanity. Under Section 4 of Article 5561a it would appear that nothing less than an adjudication of sanity would be effective to bring about the permanent discharge of an insane person confined in a state institution, unless other statutory authority for the latter's release by the institution of incarceration can be found in the laws of the S$_t$ate.

We have been unable to find any direct statutory authorization for discharge of a person of unsound mind by the officials of a state institution in which the insane party was permanently confined by an order of the court. Section 2 of Article 3193o, Vernon's Annotated Civil Statutes (Acts 1937, Forty-fifth Legislature, p. 542, ch. 268), concerns the release of temporarily committed patients, as follows:

"A person who has been temporarily committed by the County Court to a State hospital for observation and/or treatment, may be released, discharged, or furloughed by the hospital superintendent at any time during the commitment period. Said patient shall be automatically discharged on the expiration date fixed in the Court's order and the hospital superintendent shall thereupon immediately release such patient, and any discharge from said superintendent of said patient shall operate to fully set aside in all respects said order of commitment by the County Court."

As pointed out above, we have assumed that the present question is not based on a temporary commitment of the lunatic. Nor is the question in our opinion based on a grant of temporary absence to the inmate. Article 3193i, Revised Civil Statutes of 1925, authorizes the superintendnet of an institution of confinement to grant temporary leaves of absence to inmates on certain well defined conditions. It does not authorize a discharge.

Article 3193i provides:

"The superintendent of any isntitution, after the examination as hereinafter provided, may permit any inmate thereof temporarily to leave such institution in charge of his guardian, relatives, friends, or by himself, for a period not exceeding twelve months, and may receive him when returned by such guardian, relative, friend, or upon his own application, within such period, without any further order of commitment, but no patient, who has been charged with, or convicted of, some offense and been adjudged insane in accordance with the provisions of the code of criminal procedure, shall be permitted to temporarily

leave such institution without the approval of the governor, nor shall such permission terminate or in any way affect the original order of commitment. The superintendent may require as a condition of such leave of absence, that the person in whose charge the patient is permitted to leave the institution, shall make reports to him of the patient's condition. Any such superintendent, guardian, relative, or friend may terminate such leave of absence at any time and authorize the arrest and return of the patient. Any peace officer of this State shall cause such patient to be arrested and returned upon the request of any such superintendent, guardian, relative or friend. Any patient, except such as are charged with, or convicted of some offense, and have been adjuged insane in accordance with the provisions of the code of criminal procedure, who has returned to the institution at the expiration of twelve months may be granted an additional leave by the superintendent or upon his recommendation."

The statute states that temporary leave shall be "for a period not exceeding twelve months," and that any patient,with the exception of insane criminals, "who has returned to the institution at the expiration of twelve months may be granted an additional leave by the superintendent, or upon his recommendation."

It will be observed that the above quoted section states that the superintendent may re-admit the grantee of the leave "without any further order of commitment" within the twelve months period. The statute is silent as to whether or not a further order of commitment is necessary if the inmate overstays his twelve-month leave of absence with or without the permission of the superintendent, and if a further order is necessary whether it can be issued on the original judgment or whether a new trial and new order is necessary.

While these questions are not involved in this instance, it is important to refer to the opinion of this department rendered on February 26, 1931, by Honorable Elbert Hooper, Assistant Attorney General, addressed to Dr. Chas. W. Castner, Superintendent of Wichita Falls State Hospital, holding Article 3193i, supra, could not be re-admitted to the institution from which they had taken leave, if they did not report at the end of the twelve months period designated in the statute. Furthermore, it was held that it was the duty of the superintendent of state hospitals, when a patient remains or is kept out of a state hospital for a longer period than twelve months, to discharge such patient.

We have been unable, as previously indicated, to find any direct authority in the statutes of Texas relating to insanity whereby the superintendent or officials of a hospital for the insane could discharge a person adjudicated insane with such finality as to require a recommitment and additional judicial proceedings.

We admit that Article 3183j, Revised Civil States, 1925, infers that the officials of a state hospital have such power. Said section reads as follows:

"No patient in a State hospital shall be discharged there-from or permitted to leave on a temporary visit without suitable clothing; and the Board of Control may furnish the same, and such an amount of money, not exceeding twenty dollars ($20.00) as they may consider necessary. Inquiry shall be made into the future situation of every patient about to be discharged or permitted to be temporarily absent, and precautionary medical advice shall be given him. No patient shall be discharged or permitted to be tem-porarily absent from any institution without a personal examina-tion of his mental condition made by one of the hospital physi-cians within forty-eight hours of his departure, the result of which shall be entered in his case record."

The above quoted Article refers to discharge as if the Legisla-ture assumed that such power was vested in the institution of confinement.

The Texas authorities, moreover, throw little light upon the question of the authority of the institution to discharge a patient perma-nently.

In West Lumber Co. vs. Henderson (1922), 238 S.W. 710, the fol-lowing proposition of law is announced:

"The rule is well established that when one has been adjudged insane and committed to the insane asylum, he con-tinues to be insane until discharged. 22 Cyc. 1115; 14 R.C.L. 622."

In the case of Mitchell vs. Stanton (1911), 139 S.W. 1033, it was held that adjudication of insanity by a court of jurisdiction was in the nature of a proceeding in rem fixing status of the party involved:

". . . the appellee was adjudged a lunatic by a court of competent jurisdiction, and under and by virtue of such judgment was committed to the lunatic asylum on April 21, 1887, where he has continuously ever since been held as a prisoner by the authority of the State of Texas. Such adjudication was in the nature of a proceeding in rem, fixing the status of appellee as a lunatic, and, insofar as it affects his rights, is notice to everyone while it subsists and is in force by imprisonment of the lunatic."

Since we do not find any express provision of our statutes au-thorizing or prohibiting the final discharge of a patient committed to the asylum by the officials thereof without a court order under Section 4 of Article 5561a, we must of necessity construe the present statutes.

It is our opinion that the proper officers of the asylum would have the power to discharge a recovered patient with the effect of nullifying the order of commitment.

Our authority is the case of Byers vs. Solier, 16 Wyo. 232, 93 Pac. 59 (1907), Supreme Court of Wyoming.

The facts of this case create the same situation described in the letter of request. In April, 1893, Byers was legally committed to the Wyoming State Hospital for the insane by the district court of Albany County. Eight years later he was released and discharged to the control of his mother, who took him to Michigan. Having become insane again in his mother's custody, the Michigan authorities returned him to Wyoming where Solier, the superintendent of the state hospital, took possession of him again without a new trial. Petition for habeas corpus was filed for and on behalf of Byers.

At the time this case was decided, the Wyoming statutes closely paralleled the present Texas law in regard to insane persons. There was no express statutory authorization of permanent discharge by the insane asylum, and no provision for re-commitment of a person discharged and later relapsed into insanity. Section 4894, Revised Statutes of 1899, called for an adjudication of sanity by jury or the court when the question for a restoration of capacity if the party was held sane. The court, after expressing considerable doubt, held that the insane asylum possessed the power of perment discharge of a person its officials considered restored to sanity, although it did not decide the matter of whether restoration of capacity would follow a discharge by the asylum, in the absence of express statutory authority for such discharge.

We quote and adopt the language of the court in respect to the matter of the discharge of a party restored to sanity by a state institution:

"In the absence of a statute making positibe regulations for a voluntary discharge, must a patient, once committed to the asylum, be retained there until released upon habeas corpus, or by some other authorized judicial proceeding by which a release may be enforced; or, without a judicial investigation, may the officers in charge of the institution discharge one committed to it when they are able to determine that a proper degree of recovery has occurred to justify it, or upon the happening of any condition rendering the discharge in their judgment advisable? We are of the opinion that in the absence of a statute making contrary regulations or restrictions, or expressly or impliedly vesting exclusive authority in the premises elsewhere, the controlling authorities of the institution, to carry out the obvious purpose of its establishment, must be held to possess the power to voluntarily release a committed party upon his recovery; or, in the exercise of a reasonable discretion and acting in good faith, whenever the circumstances are deemed proper to justify such a

course, to release a patient who may not have fully recovered, either unconditionally, or temporarily and upon expressed conditions. That the state board and the superintendent have found the exercise of such power to be necessary, in the present state of our statutes, is shown by the averments of the answer in this case. If that should be deemed too great a power to vest in the hospital authorities without restriction, it is a matter easily remedied by legislation. It is clearly not impossible or even improbable that in occasional cases the character of the mental disorder of an inmate may be such that his care out of the institution by relatives or friends willing to assume the burden thereof will be proper without endangering the welfare of the patient or the safety of the public."

We feel that in Texas, although there is no express authorization for an unconditional discharge by the institution, still the statutes considered, in the absence of specific statutory restriction, impliedly authorize discharge by the state institutions. As suggested in the Wyoming case, if this is too great a power to vest in the insane asylum or hospital authorities, the situations may be remedied easily by the Legislature. As a matter of policy, we do not anticipate any endangering of the public from this construction of our statutes.

The principal question in the case concerns the necessity of a new trial for a party who has been discharged and later becomes insane again.

The case of Byers vs. Solier, supra, is a direct authority on this point, and we follow its decision unqualifiedly in the case of an unconditional discharge.

Quoting from the opinion:

"Having concluded that the authorities in control of the hospital for the insane may in good faith discharge a patient committed thereto, we are next to inquire into the effect of an unconditional discharge, such as occurred in 1901 by the discharge of the plaintiff in this case. We refer to that discharge as unconditional, for we think the circumstances show it to have been such. That any condition was attached to the discharge is not disclosed by the answer or the evidence. It may have been and probably was confidently expected that the patient would be kept out of the state, or at least safely in the mother's custody, but it does not appear that the release of plaintiff was conditioned upon that being done. In view of the matter heard and determined upon a lunacy inquisition under the statute providing therefor, and the effect of an order and commitment for the restraing of the party found upon such an inquisition to be of unsound mind or incompetent, the conclusion seems to be inevitable that the

> hearing and commitment will have served their purpose, and
> ceased to be effectual, after an unconditional discharge
> from the place of lawful restraint by competent authority.
> If circumstances thereafter should arise seeming to require
> or justify a renewal of the custody and restraint, in the
> interest of the person or the public, another hearing ought
> to be had to determine the question. Great injustice would
> often, if not generally, result from a different rule, even
> if the legal rights of the party to be personally affected
> were not to be considered. But a person charged with insan-
> ity or other mental infirmity has the same legal right as
> any other citizen to claim the benefit of constitutional and
> statutory provisions affecting his personal liberty."

See also In re Thorpe, 64 Vt. 398, 24 Atl. 991; Gresh's Case, 12 Pac. Co. Ct. R. 295.

While we are uncertain as to the civil rights of a person upon whom is affixed the status of insanity in a proceeding in rem, to refer to the Texas case of Mitchell vs. Stanton, supra, we recognize a right of personal liberty even in a person charged with insanity or mental infirmity as long as the safety of the public is not jeopardized. The Wyoming court recongizes an exception to its ruling that the asylum authorities are not vested with authority to recommit a person previously discharged without a legal inquiry provided by law. This is the case of one violently and dangerously insane. Such a person may be temporarily confined until the necessary legal proceeding can be had. The court said:

> "Generally, it is permissible, without warrant
> or express authority, to confine temporarily a per-
> son disposed to do mischief to himself or another
> person, until the proper proceedings can be institut-
> ed to have the question of his sanity determined. In
> such a case, the restrain becomes necessary and, there-
> fore, proper, both for the safety of the party himself
> and for the preservation of the public peace. 16 Am.
> & Eng. L. (2nd Ed.) 596."

The above exception would have effect in any case. The dangerous lunatic has no inalienable right to roam the country at will and terrorize the pupulace. He must be confined until the legal machinery designed to see that he receives justice and the benefits of due process of law is set in motion.

It is our opinion that when a person has been adjudicated insane by a court of competent jurisdiction, and confined in a State institution, if this institution unconditionally discharges this person whose mental condition later becomes such that it is necessary that he be re-committed, it is necessary that the person be tried again for insanity before he can be committed to or confined in the institution from which he was discharged, even though the original judgment of conviction has not been set aside.

Trusting that the above fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

BY
    s/ Dick Stout
    Dick Stout
    Assistant

DS:FG:egw

This opinion has been considered in conference, approved, and ordered recorded.

s/ Gerald C. Mann
GERALD C. MANN
ATTORNEY GENERAL OF TEXAS